UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| **BRANDON CALLIER,** § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | EP-20-CV-00106-FM |
| § | |
| **SUNPATH LTD; NATIONAL CAR** § | |
| **CURE LLC; NORTHCOAST** § | |
| **WARRANTY SERVICES, INC.;** § | |
| **JOHN DOES #1-4,** § | |
| § | |
| Defendants. § | |

## ORDER DENYING MOTION TO DISMISS

Before the court is "Defendant's SunPath, Ltd. and NorthCoast Warranty Services, Inc.'s Motion to Dismiss Plaintiff's Complaint" ("Motion") [ECF No. 9], filed June 2, 2020 by SunPath, Ltd. ("SunPath") and NorthCoast Warranty Services, Inc. ("Northcoast"); "Plaintiff's Response to Defendants SunPath, Ltd.'s and National Care Cure's [sic] Motion to Dismiss for Lack of Personal Jurisdiction" ("Response") [ECF No. 11], filed June 23, 2020 by Brandon Callier ("Plaintiff"); and "Defendant's Reply in Support of their Motion to Dismiss Plaintiff's Complaint: ("Reply") [ECF No. 12], filed June 30, 2020. After due consideration of the Motion, Response, Reply, and applicable law, the Motion is **DENIED**.

**I.    BACKGROUND**

This action arises from a series of at least ten phone calls Plaintiff received over sixty days. These calls came from a variety of phone numbers and contained a pre-recorded message selling the products and services of SunPath and National Car Cure, LLC through broker

1

Northcoast Warranty Services.[1] The telemarketers used spoofed local numbers.[2] The calls then connected Plaintiff to a telemarketer after three to four seconds of dead air, indicating the calls were initiated using an automatic telephonic dialing system.[3] The telemarketers did not identify themselves or the company for which they worked.[4]

Plaintiff brought this action against SunPath, Northcoast, and National Care Cure, LLC for violation of the Telephone Consumer Protection Act of 1991 ("TCPA")[5] and Section 305 of the Texas Business and Commerce Code.[6] Plaintiff claims these entities are vicariously liable for the violations as direct beneficiaries of the telemarketing calls, regardless of whether they initiated the calls themselves.[7]

Plaintiff, a resident of Texas, purchased a car warranty from "Defendants."[8] SunPath is a Delaware corporation engaged in selling and administering extended automotive service agreements, with its principal offices in Braintree, Massachusetts.[9] Northcoast is a Delaware corporation that issues those automobile service contracts to consumers, with its principal place

---

[1] "Plaintiff's Original Complaint" ("Compl.") 6 ¶¶ 25–27, ECF No. 1, filed Apr. 20, 2020.

[2] *Id*. at 6 ¶ 29.

[3] *Id*. at 6 ¶¶ 27–28.

[4] *Id* at 6 ¶ 28.

[5] 47 U.S.C. § 227, *et seq*.

[6] Compl. 3–5.

[7] *Id*. at 8 ¶ 40.

[8] *Id* at 6 ¶ 26. *See also* Compl, "Contract Declarations," ECF No. 1-1, Ex. 1.

[9] "Defendant's SunPath, Ltd. and NorthCoast Warranty Services, Inc.'s Motion to Dismiss Plaintiff's Complaint" ("Mot.") 3, ECF No. 9, filed June 2, 2020.

of business in Ohio.[10] SunPath and Northcoast move to dismiss claims against them for lack of personal jurisdiction and failure to state a claim upon which relief may be granted.[11]

## II. LEGAL STANDARD

### A. Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant.[12] A federal court may exercise jurisdiction over a nonresident defendant, provided state law confers such jurisdiction and its exercise comports with due process under the Constitution."[13] The Texas Long-Arm Statute has been interpreted to extend as far as is permitted by due process.[14] Due process permits the exercise of jurisdiction only if the nonresident defendant has purposefully established "minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"[15]

The minimum contacts of a nonresident defendant with the forum state may support either "specific" or "general" jurisdiction.[16] General jurisdiction exits "when defendant's affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home

---

[10] *Id.* at 3.

[11] *Id.* at 1.

[12] FED. R. CIV. P. 12(b)(2).

[13] *DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260 (5th Cir.1983). *Omni Capital Int'l v. Rudolf Wolff & Co., Ltd.,* 484 U.S. 97, 105–06 (1987).

[14] *Jones v. Petty–Ray Geophysical Geosource, Inc.,* 954 F.2d 1061, 1067 (5th Cir.1992), *cert. denied,* 506 U.S. 867 (1992).

[15] *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940)).

[16] *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *Interfirst Bank Clifton v. Fernandez,* 844 F.2d 279, 282 (5th Cir. 1988), *opinion withdrawn in part on other grounds,* 853 F.2d 292 (1988).

in the forum State."[17]  When analyzing whether a court has specific jurisdiction, the Fifth Circuit applies a three-part framework:

1) whether the defendant purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there;

2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and

3) whether the exercise of personal jurisdiction is fair and reasonable.[18]

The "purposeful availment requirement ensures that a defendant will not be hailed into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person."[19]

It is the plaintiff's burden to establish the court has personal jurisdiction.[20]  The burden is satisfied if the plaintiff makes out a *prima facie* case supporting jurisdiction.[21]  Allegations in the complaint are taken as true except to the extent they are contradicted by defendant's affidavits.[22]  Any genuine, material conflicts between the facts established by the parties' affidavits and other evidence are resolved in favor of the plaintiff.[23]

---

[17] *Daimler AG v. Bauman,* 571 U.S. 117, 127 (2014); *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 919 (quoting *Int'l Shoe Co.*, 326 U.S. at 316).

[18] *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 433 (5th Cir. 2014) (citing *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)).

[19] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

[20] *WNS, Inc. v. Farrow*, 884 F.2d 200, 202 (5th Cir. 1989).

[21] *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000).

[22] *Wyatt v. Kaplan*, 686 F.2d 276, 282-83 n.13 (5th Cir. 1982)); *Black v. Acme Mkts., Inc.*, 564 F.2d 681, 683 n.3 (5th Cir. 1977).

[23] *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1067 (5th Cir. 1992).

## III.     DISCUSSION

### A.     *General Personal Jurisdiction*

This court does not have general jurisdiction over either SunPath or Northcoast as neither are "at home" in Texas. Neither company is incorporated in Texas, nor is either's principal place of business in Texas.[24] Any contacts either has with Texas cannot be said to be continuous and systemic to the point of rendering them at home.[25] Plaintiff asserts this court has general personal jurisdiction,[26] but fails to discuss how either SunPath or Northcoast is essentially at home in Texas. He therefore fails to carry his burden of establishing they are subject to this Court's general personal jurisdiction.

### B.     *Specific Personal Jurisdiction*

#### 1.     Direct Liability

Some district courts have determined specific jurisdiction exists where an out-of-state defendant purposefully avails itself of the benefits of a forum state by making marketing calls to phone numbers with forum area codes.[27] It is unclear from the face of the complaint whether

---

[24] Mot. 1.

[25] *See Daimler AG v. Bauman,* 571 U.S. 117, 127 (2014).

[26] Compl. 2 ¶ 7.

[27] *Lowe v. CVS Pharmacy*, 233 F.Supp.3d 636, 645 (N.D. Il. 2017) (holding the Illinois district court had personal jurisdiction over an out-of-state defendant as it placed a call to a phone number with an Illinois area code); *Cunningham v. Florio*, No. 4:17-cv-00839-ALM, 2018 WL 4473792, at *9 (E.D. Tex. Aug. 6, 2018) (holding the court had personal jurisdiction over an out-of-state telemarketing firm that entered into an agreement with a Texas firm to place calls in Texas); *Casso's Wellness Store & Gym, LLC v. Spectrum Lab. Prod., Inc.*, No. 17-2161, 2018 WL 1377608, at *5–6 (E.D. La. Mar. 19, 2018) (holding the district court had personal jurisdiction over an out-of-state defendant that directed TCPA-prohibited fax advertisements to a Louisiana fax number); *Abramson v. Caribbean Cruise Line, Inc.*, No. 2:14-cv-00435, 2014 WL 2938626, at *9 (W.D. Penn. June 23, 2014) (holding the district court had personal jurisdiction over an out-of-state defendant as it placed a call to a phone number with a Pennsylvania area code).

Plaintiff asserts either SunPath or Northcoast initiated the telemarketing calls Plaintiff received.[28] Plaintiff does provide evidence that the calls came directly from SunPath or Northcoast rather than from a third-party contracted to market their services. To the extent Plaintiff suggests either SunPath or Northcoast directly contacted him, this allegation is contradicted by sworn affidavits.[29] Therefore, the court need not accept it as true for the purposes of determining whether Plaintiff has made a *prima facie* case.[30] In sum, Plaintiff has not met his pleading burden to establish personal jurisdiction over Sunpath and Northcoast on the basis of their direct contacts with Texas.

### 2. Agency Liability

On the other hand, Plaintiff clearly asserts jurisdiction is established by an agency relationship between SunPath and Northcoast as principals and an unidentified third-party telemarketer as their agent.[31] Courts generally "must assess each defendant's contact with the forum state individually—a substantial connection is not formed by the 'unilateral activity of another party or a third person.'"[32] However, the authorized actions of an agent may be imputed to that agent's principal.[33] The Federal Communications Commission has stated this principle

---

[28] *See generally* Compl. Plaintiff refers several times to "Defendants and/or their affiliates or Agents," but asserts only vicarious, rather than direct, liability and does not directly state who he believes is responsible for the marketing calls.

[29] *See* Mot., "Declaration of Barry W. Moses in Support of Defendants' Motion to Dismiss" ("Decl. of Barry W. Moses") 2 ¶ 6, ECF No. 9-1; Mot., "Declaration of Andrew Garcia in Support of Defendants' Motion to Dismiss" ("Decl. of Andrew Garcia") 2 ¶ 5, ECF No. 9-2.

[30] *See Wyatt v. Kaplan*, 686 F.2d 276, 282–83 n.13 (5th Cir. 1982)); *Black v. Acme Mkts., Inc.*, 564 F.2d 681, 683 n.3 (5th Cir. 1977).

[31] *See* Compl. 8 ¶¶ 39–41.

[32] *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 543 (2019) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

[33] *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 753 F.3d 521, 534 (5th Cir. 2014); *McFadin v. Gerber,* 587 F.3d 753, 761 (5th Cir. 2009).

applies to TCPA actions against businesses that contract telemarketers.[34] A seller "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[35] It reasoned that this understanding of the statute best implements Congress' purpose behind the rules—to protect privacy rights.[36]

To prove the existence of an agency relationship, the principal must have "both the right: (1) to assign the agent's task; and (2) to control the means and details of the process by which the agent will accomplish that task."[37] Alternately, apparent authority holds a principal accountable for the results of third-party beliefs about an actor's authority to act as an agent when the belief is traceable to a manifestation of the principal.[38] Finally, a principal may be liable on the theory of ratification if it retains the benefits of a transaction after acquiring full knowledge of the underlying circumstances.[39]

Plaintiff has not made out a *prima facia* case that such an agency relationship exists to support personal jurisdiction. He makes the conclusory assertion that SunPath and Northcoast are vicariously liable "as the direct beneficiaries of the illegal telemarketing calls."[40] However, he does not state the nature of the relationship these entities have with the unidentified

---

[34] *See In re Dish Network, LLC*, 28 F.C.C. Rcd. 6574, 6574 (2013).

[35] *Id.*

[36] *Id.* at 6585.

[37] *Indian Harbor Ins. Co. v. Valley Forge Ins. Grp.*, 535 F.3d 359, 364 (5th Cir. 2008) (citing *Happy Indus. Corp. v. Am. Specialties, Inc.*, 983 S.W.2d 844, 852 (Tex. App.—Corpus Christi 1998, pet. dism'd w.o.j.)). *See also Comty Health Sys. Prof'l Servs. v. Hansen*, 525 S.W.3d 671, 697 (Tex. 2017) (defining actual authority).

[38] *Cactus Pipe & Supply Co. v. M/V Montmartre*, 756 F.2d 1103, 1111 (5th Cir. 1985); *NationsBank, N.A. v. Dilling,* 922 S.W.2d 950, 952–53 (Tex. 1996) (per curiam).

[39] *Land Title Co. v. F.M. Stigler, Inc.*, 609 S.W.2d 754, 756–57 (Tex. 1980).

[40] Compl. 8 ¶ 40.

7

telemarketing firm soliciting business on their behalf. The affidavits provided by SunPath and Northcoast state neither entity maintains control or oversight over third-party marketing firms.[41] Nor do SunPath or Northcoast select who third-party marketing firms market to or the manner in which those marketing firms conduct their operations.[42] Plaintiff offers no factual support in contradiction to create the genuine, material conflict needed to resolve the dispute in his favor.[43]

Contrary to Plaintiff's assertion,[44] this court cannot reasonably infer an agency relationship from the mere fact that telemarketing calls were made on behalf of SunPath and Northcoast. In order for an agency relationship to exist, SunPath and Northcoast must have had the authority to assign tasks and control the means and details of the process by which the third-party telemarketer responsible for calling Plaintiff in Texas conducts its business.[45] If this control does not exist, the calls are merely unilateral activities of a third party, which may not provide the basis for personal jurisdiction.[46] They do not reflect that SunPath and Northcoast purposefully availed themselves of the of the privileges of conducting business in Texas by directing marketing efforts there.[47]

Plaintiff also cannot establish a telemarketer acted with apparent authority. While it may be reasonable to believe a telemarketer soliciting business on behalf of an entity is acting as an

---

[41] Decl. of Barry W. Moses 2 ¶¶ 7–10; Decl. of Andrew Garcia 2 ¶¶ 6–10.

[42] Decl. of Barry W. Moses 2 ¶ 8; Decl. of Andrew Garcia 2 ¶ 7.

[43] *See Wyatt v. Kaplan*, 686 F.2d 276, 282–83 n.13 (5th Cir. 1982)); *Black v. Acme Mkts., Inc.*, 564 F.2d 681, 683 n.3 (5th Cir. 1977).

[44] Resp. 10.

[45] *See Indian Harbor Ins. Co. v. Valley Forge Ins. Grp.*, 535 F.3d 359, 364 (5th Cir. 2008).

[46] *See Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 543 (2019).

[47] *See Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 433 (5th Cir. 2014). *See also Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 313 (5th Cir. 2007) (finding no specific personal jurisdiction in part because the contract was silent as to the location of performance, so the forum state was not the hub of the contract's activity).

agent, the belief must be traceable to the conduct of the principal—in this case, SunPath or Northcoast.[48] Plaintiff has not pleaded facts establishing either SunPath or Northcoast acted to create the appearance of an agency relationship. Ratification is inapplicable for the same reason. Although Sunpath and Northcoast undoubtedly benefited from the marketing calls, nothing in the pleadings indicates either were aware of the actions allegedly in violation of the TCPA. Such knowledge is necessary to meet the standard for ratification, which requires full knowledge of the underlying circumstances.[49] In sum, Plaintiff has not met his pleading burden to establish personal jurisdiction over Sunpath and Northcoast on the basis of agency.

  C.  *Jurisdictional Discovery*

The court has discretion to permit a party to conduct jurisdictional discovery to resolve issues of fact raised by a motion to dismiss for lack of personal jurisdiction.[50] To support a request for jurisdictional discovery, a plaintiff must first make "a preliminary showing of jurisdiction."[51] A preliminary showing requires "factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts."[52] "When the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted."[53]

It is clear general personal jurisdiction over SunPath and Northcoast does not exist and cannot be established. However, the court is sensitive to Plaintiff's limited ability to discern the

---

[48] *See Cactus Pipe & Supply Co. v. M/V Montmartre*, 756 F.2d 1103, 1111 (5th Cir. 1985); *NationsBank, N.A. v. Dilling,* 922 S.W.2d 950, 952–53 (Tex. 1996) (per curiam).

[49] *See Land Title Co. v. F.M. Stigler, Inc.*, 609 S.W.2d 754, 756–57 (Tex. 1980).

[50] *Wyatt v. Kaplan,* 686 F.2d 276, 283 (5th Cir. 1982).

[51] *Fielding v. Hubert Burda Media, Inc.,* 415 F.3d 419, 429 (5th Cir. 2005).

[52] *Id*.

[53] *Wyatt,* 686 F.2d at 284.

9

identity of the telemarketing firm responsible for contacting him and the nature of its relationship with SunPath and Northcoast without discovery.  The pleadings make clear: (1) SunPath and Northcoast are the beneficiaries of the marketing calls Plaintiff received, even if neither placed the calls directly;[54] and (2) the telemarketer alleged to have violated the TCPA had the authority to sell Plaintiff a car warranty on their behalf.[55]  While Plaintiff does not meet the pleading burden to establish personal jurisdiction, these allegations "suggest with reasonable particularity the possible existence of the requisite contacts."[56]  Specifically, the existence of contracts between SunPath, Northcoast, and a telemarketing firm would resolve the question of fact as to their relationship.  As such, limited jurisdictional discovery for the purpose of investigating whether this court has specific jurisdiction will be permitted.

    D.    *Leave to Amend*

Under Federal Rule of Civil Procedure 15, "a party may amend its pleading only with the opposing party's written consent or the court's leave."  The court should "freely give leave when justice so requires."[57]  In determining whether leave to amend should be granted, the court can consider factors such as: (1) undue delay; (2) bad faith or dilatory motive on the part of the movant; (3) repeated failure to cure deficiencies by amendments previously allowed; (4) undue

---

[54] Compl. 8 ¶ 40.

[55] *Id* at 6 ¶ 26.  *See also* Compl, "Contract Declarations," ECF No. 1-1, Ex. 1.

[56] *See Fielding,* 415 F.3d at 429.

[57] FED. R. CIV. P. 15(a)(2).

prejudice to the opposing party; and (5) futility of amendment.[58] A court must have "substantial reason" to deny a request for leave to amend.[59]

Plaintiff will be permitted to amend his complaint in order to incorporate the limited jurisdictional discovery ordered by the court. Amendment following jurisdictional discovery would be a good faith attempt to strengthen pleadings in light of new information. As this will be Plaintiff's first amended complaint, there has not yet been repeated failure to cure deficiencies to overcome the liberal policy in favor of amendment. Amendment will not cause undue delay or undue prejudice given the early phase of proceedings.

## IV. CONCLUSION

Plaintiff has not met his pleading burden to establish this court has personal jurisdiction over Defendants Sunpath Ltd. and Northcoast Warranty Services, Inc. However, the court will permit jurisdictional discovery and subsequent amendment of the complaint. As it remains uncertain at this point whether the court has personal jurisdiction, it does not reach the issue of whether Plaintiff stated a claim for which relief may be granted. Accordingly, the court enters the following orders:

1. It is **HEREBY ORDERED** that "Defendant's SunPath, Ltd. and NorthCoast Warranty Services, Inc.'s Motion to Dismiss Plaintiff's Complaint" [ECF No. 9] is **DENIED**.

2. It is **FURTHER ORDERED** that Defendants SunPath, Ltd. and NorthCoast Warranty Services, Inc. **PRODUCE** to Plaintiff Brandon Callier contracts or agreements either has with companies authorized to market their products or services or to initiate outbound sales calls to consumers on their behalf during the period Plaintiff alleges he received sales calls. Alternatively, Defendants SunPath, Ltd. and NorthCoast Warranty Services, Inc. must **PRODUCE** any documents describing either of their relationships with telemarketers or resale

---

[58] *Ashe v. Corley*, 992 F.2d 540, 542 (5th Cir. 1993) (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)).

[59] *Lyn-Lea Travel Corp. v. Am. Airlines*, 283 F.3d 282, 286 (5th Cir. 2002) (quoting *Jamieson v. Shaw*, 772 F.2d 1205, 1208 (5th Cir. 1985)).

       companies and the process by which such an entity may connect a customer to either SunPath, Ltd. or NorthCoast Warranty Services, Inc.

3. It is **FURTHER ORDERED** that Defendants SunPath, Ltd. and NorthCoast Warranty Services, Inc. **SHALL** file a discovery status report within **45 days** of the date of this order.

4. It is **FURTHER ORDERED** that Plaintiff **SHALL** file an amended complaint, if any, within **45 days** of receipt of jurisdictional discovery materials.

**SIGNED AND ENTERED** this **10th** day of **August, 2020**.

_____
**FRANK MONTALVO**
**UNITED STATES DISTRICT JUDGE**