RECEIVED
OCT 0 2 2020
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
    DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| **BRANDON CALLIER,** <br> **Plaintiff,** <br><br> v. <br><br> SUNPATH LTD, NORTHCOAST WARRANTY SERVICES, INC., NATIONAL CAR CURE, LLC, CELTIC MARKETING, LLC, JOHN DOE 1, an unknown business entity, JOHN DOE 2, an unknown business entity, and JOHN DOES 3-4 <br> **Defendants** | § § § § § § § § § § § § § § **Case No. 3:20-cv-00106** |

## PLAINTIFF'S SECOND AMENDED COMPLAINT

NOW COMES PLAINTIFF BRANDON CALLIER, with his Second Amended Complaint herein alleges and states as follows:

### Parties

1. The Plaintiff is Brandon Callier, a natural person, and was present in Texas for all calls, in this case in El Paso County.

2. SunPath Ltd. is a Delaware corporation and can be served via registered agent Registered Agent Solutions, Inc., 155 Office Plaza Drive, Suite A, Tallahassee, Florida 32301.

3. Northcoast Warranty Services, Inc. is a Delaware corporation and can be served via registered agent Corporation Service Company, 1201 Hays Street, Tallahassee, Florida 32301.

4. National Car Cure, LLC is a Florida corporation and can be served via registered agent Zander

1

Collins & Smith, at 1665 Palm Beach Lakes BLVD STE 215, West Palm Beach, FL 33401

5. Celtic Marketing, LLC ("Defendant VAD") D/B/A VAD also known as CM AUTO is a Nevada corporation and can be served via registered agent John Clark at 1452 W Horizon Ridge Parkway, suite 279, Henderson, Nevada 89012.

6. John Doe 1 is an unknown business entity contracted by Celtic Marketing, LLC to make automated solicitation phone calls.

7. John Doe 2 is an unknown business entity contracted by National Car Cure, LLC to make automated solicitation phone calls.

8. John Does 3-4 or other unknown business entities contacted by Defendants to make automated solicitation phone calls.

## JURISDICTION AND VENUE

9. <u>Jurisdiction</u>. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053 because that claim arises from the same nucleus of operative fact, i.e., Defendants' telemarketing robocalls to Plaintiff; adds little complexity to the case; and doesn't seek money damages, so it is unlikely to predominate over the TCPA claims.

10. **<u>Personal Jurisdiction</u>.** This Court has general personal jurisdiction over the defendant because they have repeatedly placed calls to Texas residents, and derive revenue from Texas residents, and they sell goods and services to Texas residents, including the Plaintiff.

11. **<u>Venue</u>.** Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at

Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District. Residing in the Western District of Texas when he received a substantial if not every single call from the Defendants that are the subject matter of this lawsuit.

12. This Court has venue over the defendants because the calls at issue were sent by or on behalf of the above named defendants to the Plaintiff, a Texas resident.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

13. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

14. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system (ATDS) or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

15. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

16. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

17. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon

3

demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

18. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

19. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

20. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

21. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

22. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

23. The FCC confirmed this principle in 2013, when it explained that "a seller ... may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

24. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

25. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g., Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

### The Texas Business and Commerce Code 305.053

26. The Texas Business and Commerce code has an analogous portion that is related to the TCPA and was violated in this case.

27. The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

### FACTUAL ALLEGATIONS

28. The Plaintiff has received at least 21 calls over 90 days to his cell phone, 915-383-4604 without

consent and not related to an emergency purpose.

29. When the Plaintiff answered the phone, he heard silence for several seconds before a "click" and a prerecorded message began, informing the Plaintiff the warranty on his car was about to expire. This indicated to the Plaintiff that the call was made by an automatic telephone dialing system.

30. A live agent them picked up the call and informed Plaintiff that he was selling vehicle protection plans.

31. The live agent did not identify what company the live agent was calling from during the call.

32. Plaintiff did not want or need a vehicle protection policy. However, in order to cease harassment from anonymous robocallers such as Defendants, Plaintiff purchased vehicle protection policies for the sole purpose of identifying who was calling and/or the company who was responsible for calling.

33. When Plaintiff received the policies, he discovered that the parties responsible for the robocalls were Defendants Sunpanth, Northcoast, National Car Cure and VAD.

34. Plaintiff never consented to receive calls from Defendants. Plaintiff has no relationship with Defendants and has never requested Defendants contact him in any manner.

35. All of the calls displayed a variety of spoofed caller ID's.

36. "Neighborhood spoofing" is designed to trick consumers into picking up the call as it appears to be a local call. The calls contained a pre-recorded message after a 3-4 second pause of dead air. Several of the calls used neighborhood spoofing tactics, others were real phone numbers from existing callers, innocent victims and businesses whose phone numbers were wrongfully appropriated by the defendants.

37. Plaintiff received the following calls from the Defendants (Table A and Table B).

**TABLE A**

| CALL NUMBER  | DATE      | TIME  | VENDOR |
|--------------|-----------|-------|--------|
| 203-303-9394 | 3-Feb-20  | 12:47 | VAD    |
| 203-303-9394 | 6-Feb-20  | 14:17 | VAD    |
| 203-303-9394 | 7-Feb-20  | 9:13  | VAD    |
| 203-303-9394 | 7-Feb-20  | 10:05 | VAD    |
| 203-303-9394 | 7-Feb-20  | 12:22 | VAD    |
| 203-303-9394 | 11-Feb-20 | 9:54  | VAD    |
| 203-303-9394 | 12-Feb-20 | 12:41 | VAD    |
| 203-303-9394 | 12-Feb-20 | 13:27 | VAD    |
| 203-303-9394 | 13-Feb-20 | 9:34  | VAD    |
| 203-303-9394 | 13-Feb-20 | 11:31 | VAD    |
| 203-303-9354 | 13-Feb-20 | 13:11 | VAD    |

**TABLE B**

| Date      | Time of Call | Phone Number | Name on Caller ID |
|-----------|--------------|--------------|-------------------|
| 19-Nov-19 | 10:25 AM     | 915-383-5556 | NA                |
| 21-Nov-19 | 12:46 PM     | 915-383-1254 | NA                |
| 11-Dec-19 | 3:47 PM      | 915-383-2503 | Romero Chavarri   |
| 16-Dec-19 | 2:28 PM      | 915-383-4610 | Mari Villanueva   |
| 18-Dec-19 | 11:14 AM     | 915-383-1861 | Manuel Ochoa      |
| 18-Dec-19 | 8:33 AM      | 915-383-4742 | Maria Barraza     |
| 19-Dec-19 | 1:11 PM      | 915-383-5469 | INIGUEZ           |
| 21-Dec-19 | 3:50 PM      | 317-527-9965 | Skylar Long       |
| 6-Jan-20  | 10:52 AM     | 407-272-8548 | G Valentin        |
| 21-Jan-20 | 12:59 PM     | 915-383-5130 | Vasquez Cordero   |

38. Each and every call was placed without the maintenance of an internal do-not-call policy. Each and

every call failed to identify the telemarketers and parties they were calling on behalf of. Each and every call was placed without training their agents/employees on the use of an internal do-not-call policy.

39. Mr. Callier purchased car warranty policies from the Defendants.

40. Mr. Callier received numerous additional calls from the Defendant after purchasing the car warranty because the calls were automated and initiated by the ATDS.

41. Mr. Callier has a limited data plan. Incoming text messages chip away at his monthly allotment.

42. Mr. Callier has limited data storage capacity on his cellular telephone. Incoming telemarketing calls consumed part of this capacity.

43. No emergency necessitated the calls

44. Each call was sent by an ATDS.

45. None of the defendants ever sent Mr. Callier any do-not-call policy.

46. On information and belief, none of the defendants had a written do-not-call policy while it was sending Mr. Callier the unsolicited calls

47. On information and belief, none of the defendants trained its agents engaged in telemarketing on the existence and use of any do-not-call list.

## BASIS FOR LIABILITY

48. Plaintiff alleges that even if Defendant claims that it did not make the TCPA violating robocalls to Plaintiff directly, Defendant is liable for the TCPA violating robocalls under the following theories of liability: (1) Direct Liability, (2) Actual Authority, (3) Apparent Authority, (4) Ratification, (5) Acting in Concert, and (6) Joint Enterprise.

## DIRECT LIABILITY

49. Defendants' scheme involves the use of illegal robocalling to promote their services.

50. Defendants' practice of outsourcing its robocalling to a third-party company does not absolve them from the direct liability under the TCPA.

51. On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amendable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each telemarketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' telemarketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

May 2013 FCC Ruling, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

## AGENCY ALLEGATIONS

52. The May 2013 FCC Ruling rejected a narrow view of the TCPA liability, including the assertion that a seller's liability requires finding a formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 n. 107.

53. Prior to conducting discovery in this litigation, due to the anonymous nature of robocalling, Plaintiff has no way to identify the exact relationship between Defendants.

54. However, for the purposes of the TCPA liability, Plaintiff is not expected to know this information at the pleading stage.

55. The May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships…through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46).

## ACTUAL AUTHORITY

56. Defendants Sunpath and Northcoast authorized Defendant VAD to generate prospective customers. VAD hired John Doe 1 to promote Defendants' products pursuant to robocalling. Defendant Sunpath and Northcoast's integration of robocalling into its sales process was so seamless that it appeared to an outside party like Plaintiff that Defendant VAD was the telemarketing department of Defendants Sunpath and Northcoast.

57. Defendant John Doe 1 was hired by Defendant VAD, and acted in concert with the Defendants Sunpath and Northcoast, which permitted Defendants Sunpath and Northcoast to enjoy the benefits of mass robocalling while moving the illegal activity "outside their purview."

58. Defendants Sunpath and Northcoast authorized Defendant National Car Cure to generate prospective customers. National Car Cure hired John Doe 2 to promote Defendants' products pursuant to robocalling. Defendant Sunpath and Northcoast's integration of robocalling into its sales process was so seamless that it appeared to an outside party like Plaintiff that Defendant National Car Cure was the telemarketing department of Defendants Sunpath and Northcoast.

59. Defendant John Doe 2 was hired by Defendant National Car Cure, and acted in concert with the Defendants Sunpath and Northcoast, which permitted Defendants Sunpath and Northcoast to enjoy the benefits of mass robocalling while moving the illegal activity "outside their purview."

60. Accordingly, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

61. In their January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of"

liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

62. More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

63. Defendant John Doe 1 solicited Plaintiff on behalf of Defendants VAD, Sunpath and Northcoast and had actual authority from Defendants to solicit Plaintiff by using an automated telephone dialing system.

64. Defendant John Doe 2 solicited Plaintiff on behalf of Defendants National Care Cure, Sunpath and Northcoast and had actual authority from Defendants to solicit Plaintiff by using an automated telephone dialing system.

65. The actual authority of Defendants VAD and National Car Cure is illustrated in the vehicle protection contracts issued by Defendants, where they respectively list Defendants VAD and National Car Cure as the "seller/dealer/vendor" of Defendants Sunpath and Northcoast products.

### APPARENT AUTHORITY

66. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority

> [A]pparent authority may be supported by evidence that the seller allows the outside entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to sue the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's

behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

28 FCC Rcd at 6592 (¶ 46).

67. Defendants Sunpath and Northcoast authorized Defendants VAD, National Car Cure, John Doe 1 and John Doe 2 to generate prospective customers for them.

68. The integration of their sales efforts with robocalling by Defendants VAD, National Car Cure, Sunpath, and Northcoast used was so seamless it appeared to Plaintiff that John Doe 1, John Doe 2, VAD, National Care Cure, Sunpath and Northcoast all appeared to be acting together as the same company.

69. Plaintiff reasonably believed and relied upon the fact that Defendants John Doe 1 and John Doe 2 had received permission to sell, market, and solicit Defendants VAD, National Car Cure, Sunpath and Northcoast's products.

70. The apparent authority of Defendants VAD and National Car Cure is illustrated in the vehicle protection contracts issued by Defendants where they respectively list Defendant VAD and Defendant National Car Cure as the "seller/dealer/vendor" of Defendants Sunpath and Northcoast products.

## RATIFICATION

71. Sunpath, Northcoast, National Car Cure, and VAD knowingly and actively accepted business that originated through illegal robocalls placed by John Doe 1 and John Doe 2.

72. By accepting these contracts, soliciting and executing contracts with the robocall victims, Defendants "manifest[ed] assent or otherwise consent[ed]. . . to act" on behalf of John Doe 1 and John Doe 2, as described in the Restatement (Third) of Agency.

73. Sunpath, Northcoast, National Car Cure, and VAD ratified John Doe 1's and John Doe 2's TCPA violations by knowingly accepting the benefit of a new customer despite that this customer was

generated through illegal sales calls.

74. Sunpath, Northcoast, National Car Cure, and VAD took advantage of the violations by having salespeople solicit the prospective customers while turning a blind eye to the way the potential customer was identified.

75. Sunpath, Northcoast, National Car Cure, and VAD ratified John Doe 1's and John Doe 2's TCPA violations by being willfully ignorant of the violations or by being aware that such knowledge was lacking.

76. Sunpath, Northcoast, National Car Cure, and VAD caused John Doe 1, and John Doe 2, to have the actual authority of Defendant Sunpath and Defendant Northcoast.  Restatement § 4.01 cmt. b.

## JOINT ENTERPRISE

77. Sunpath, Northcoast, National Car Cure, and VAD had tacit agreements or approved after the fact with John Doe 1 and John Doe 2 for the marketing of their services pursuant to Defendant's VAD's and National Car Cure's illegal robocalls.

78. Defendants were part of a common enterprise and had a community of interest in marketing and advertising vehicle protection plans from Sunpath, Northcoast, National Car Cure, and VAD.

79. Defendants had an equal right to control the conduct thereof by specifying the type of people to be called and the questions that should be asked to prospective consumers.

80. Defendants had a duty to exercise due care when marketing their products.

81. Defendants' violation of the TCPA is negligence per se.

82. Because of Defendants' negligence, Plaintiff suffered actual and statutory damages.

83. Sunpath, Northcoast, National Car Cure, and VAD are jointly and severally liable for the resulting damage caused by Defendants VAD's and National Car Cure's TCPA-violating telephone calls.

## CAUSE OF ACTION
### Violation of 47 U.S.C. § 227

84. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

85. Defendants and/or their agents John Doe 1 and John Doe 2 placed calls using an automate telephone dialing system to Plaintiff's cellular telephone without having Plaintiff's prior express written consent to do so.

86. The system used by the Defendants to place such automated calls had the capability to store a list of numbers and automatically dial those numbers.

87. Defendants calls were made for the purpose of advertising Defendants' products and services.

88. Defendants used an automated telephone dialing system as proscribed by 47 U.S.C. § 227(b)(1)(A)(iii) and 47 U.S.C. § 227(b)(1)(B) to generate Plaintiff's phone number.

89. As a result of its unlawful conduct, Defendants repeatedly invaded Plaintiff's personal privacy, causing him to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling Plaintiff to recover $500 in civil fines for each violation and an injunction requiring Defendants to stop their illegal calling campaign.

90. Defendants made the violating calls "*willfully*" and/or "*knowingly*" under 47 U.S.C. § 227(b)(3)(C).

91. Plaintiff is entitled up to $1500 for each willful and/or knowing violation of 47 U.S.C. § 227(b)(3)(C).

### The Plaintiff's cell phone is a residential number

92. The calls were to the Plaintiff's cellular phone 915-383-4604, which is the Plaintiff's personal cell phone that he uses for personal, family, and household use. The Plaintiff maintains no landline phones at his residence and has not done so for at least 10 years and primarily relies on cellular phones to communicate with friends and family. The Plaintiff also uses his cell phone for navigation

purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. The Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

### Violations of the Texas Business and Commerce Code 305.053

93. The actions of the defendants violated the Texas Business and Commerce Code 305.053 by placing automated calls to a cell phone which violate 47 USC 227(b). The calls by the defendants violated Texas law by placing calls with a pre-recorded message to a cell phone which violate 47 USC 227(c)(5) and 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e).

94. The calls by the defendants violated Texas law by spoofing the caller ID's per 47 USC 227(e) which in turn violates the Texas statute.

### I.   FIRST CLAIM FOR RELIEF

### (Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A))

### (Against All Defendants)

1. Mr. Callier realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making non-emergency telemarketing robocalls to Mr. Callier's cellular telephone number without his prior express written consent.

3. Mr. Callier is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

4.  Mr. Callier is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

5.  Mr. Callier also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making non-emergency telemarketing robocalls to cellular telephone numbers without the prior express written consent of the called party.

## II. SECOND CLAIM FOR RELIEF

### (Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d))

### (Against All Defendants)

6.  Mr. Callier realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

7.  The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

   a.  a written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1);[2]

   b.  training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2);[3] and,

   c.  in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

8.  Mr. Callier is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 – 26 (codifying a June 26, 2003 FCC order).

9. Mr. Callier is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

10. Mr. Callier also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making telemarketing solicitations until and unless they (1) implement a do-not-call list and training thereon and (2) include the name of the individual caller and AFS's name in the solicitations.

### III. THIRD CLAIM FOR RELIEF:

### Violations of The Texas Business and Commerce Code 305.053

11. Mr. Callier realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

12. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing robocalls to Mr. Callier's cellular telephone number without his prior express written consent in violation of 47 USC 227 et seq. The Defendants violated 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

13. Mr. Callier is entitled to an award of at least $500 in damages for each such violation. **Texas Business and Commerce Code 305.053(b)**

14. Mr. Callier is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053(c)**.

## IV. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brandon Callier prays for judgment against the defendants jointly and severally as follows:

A.  Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.  A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C.  An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.  An award of $3000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation and individual for seven calls.

E.  An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

F.  An award to Mr. Callier of damages, as allowed by law under the TCPA;

G.  An award to Mr. Callier of interest, costs and attorneys' fees, as allowed by law and equity

H.  Such further relief as the Court deems necessary, just, and proper.


October 2, 2020

*/s/ Brandon Callier*

Brandon Callier
Pro-se
6336 Franklin Trail
El Paso, TX 79912